IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| MOHAMMED A. SALEH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:19-00468 |
| | ) | |
| D. YOUNG, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On June 19, 2019, Petitioner, acting *pro se*,[1] filed his Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody. (Document No. 1.) Specifically, Petitioner complains that he is "being unlawfully denied good time credits by being housed in a medium custody prison, when in fact, [he] is low custody having only 4 points." (Id.) Petitioner alleges that "by being in medium custody, [he] has to serve a longer sentence because low custody prisons allow for home confinement & programs that result in additional good time." (Id.) Petitioner further argues that holding him in a medium security prison for three years, without any justification or hearing, results in a due process violation. (Id.) Petitioner requests that he be transferred to a "less restrictive & more freedom prison." (Id.)

By Order entered on July 29, 2019, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 6.) On August 21, 2019, Respondent filed his Response to the Order to Show Cause. (Document No. 9.)

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Respondent argues that Petitioner's Petition should be denied based on the following: (1) The Court cannot grant the requested relief because the BOP has exclusive jurisdiction to determine sentence credits (Id., pp. 3 – 4.); (2) "Petitioner has no protected interest in specific programming" (Id., p. 4.); and (3) "Petitioner has no protected interest in his security classification or where he serves his sentence" (Id., pp. 4 – 7.). As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's "Public Information Inmate Data" (Id., pp. 11 – 14.); (2) A copy of Petitioner's "Sentencing Monitoring Computation Data As of 07-29-2019" (Id., pp. 15 – 17.); (3) A copy of Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (Id., pp. 19 – 22.); (4) A copy of Program Statement 7320.01, Home Confinement (Id., pp. 23 – 25.); (5) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 27 – 28.); (6) A copy of Program Statement P5100.08, Inmate Security Designation and Custody Classification (Id., pp. 30 – 32.); and (7) The Declaration of Tiffanie Little (Document No. 16-1.).

By Order and Notice entered on August 22, 2019, the undersigned notified Petitioner of his right to file a Reply to Respondent's Response. (Document No. 10.) On September 23, 2019, Petitioner filed his Reply. (Document No. 12.) Petitioner continues to argue that he is entitled to a transfer to a lower security level prison. (Id.) Petitioner explains that he has participated in all programs afford to him and has "kept clear conduct." (Id.) Petitioner complains that despite the foregoing, "Warden Young has kept Petitioner in medium custody while denying him to go to a low [custody level prison] and earn extra good time." (Id.) Therefore, Petitioner requests that this Court "transfer Petitioner to a low [custody level] facility to earn a speedier release from active confinement." (Id.) As Exhibits, Petitioner attaches the following: (1) A copy of his Declaration in Support (Id., p. 6.); (2) A copy of the "Security Designation Table" and Program State P5100.08 (Id., pp. 8 - 9.); and (3) A copy of Petitioner's "Male Custody Classification Form" (Id., p. 10.).

## ANALYSIS

**A.    Determination of Sentence Credits:**

The Attorney General, through the Bureau of Prisons ("BOP"), has the responsibility of administering a federal offender's sentence after the district court imposes the sentence. United States v. Wilson, 503 U.S. 329, 335, 112 S.Ct. 1351, 1354-55, 117 L.Ed.2d 593 (1992). Title 18 U.S.C. § 3624(b) vests the BOP with discretionary authority to award and calculate good conduct time for federal prisoners. Specifically, Section 3624(b)(1) provides, in pertinent part, as follows:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to the determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with the institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1). A court, however, does not have authority to award good time credit. Joshua v. United States, 2018 WL 8803960, * 2 – 3 (E.D.Va. Jan. 24, 2018)(While a Court has discretion to revoke earned-release credit pursuant to 28 U.S.C. § 1932, "that authority does not likewise allow the court to award earned-release credit."); also see Wilson, 503 U.S. at 335-36, 112 S.Ct. at 1354-55.

In the instant case, Petitioner argues that he is receiving less good time credit because he is incarcerated at a medium security prison. Petitioner's above argument, however, is without merit. Section 3624(b)(1) clearly provides that an inmate serving a sentence greater than 1 year, and less than life, receives up to 54 days at the end of each year "subject to the determination by the Bureau of Prisons that, during the year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." There is no provision allowing for more or less good time credit based upon an inmate's security level or place of incarceration. The Court finds no authority

supporting Petitioner's claim that prisoners with lower security levels receive more good time credit.

**B.    No protected interest in programming:**

Next, Petitioner appears to argue that he has a protected interest in participating in certain rehabilitative programs offered at prisons with a lower security level.[2] It is well established, however, that an inmate has no federal right to demand rehabilitative programs. Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S. Ct. 274, 279, n. 9, 50 L. Ed. 2d 236 (1976)(holding that federal prisoners have no statutory or constitutional right to participate in rehabilitative programs while incarcerated); Acree v. Clark, 86-7167, 1986 WL 18023 (4th Cir. Nov. 10, 1986) citing Bowring v. Godwin, 551 F.2d 44, 48 n 2 (4th Cir. 1977)(stating that "[i]t has been widely recognized that rehabilitation is one of the primary purposes and goals of incarceration, although it is not mandated by any provision of the Constitution"); Tooley v. Ballard, 20212 WL 1036263, * 4 (S.D.W.Va.

---

[2] The undersigned acknowledges that on December 21, 2018, the First Step Act of 2018 was signed into law and created a "new risk and needs assessment system to provide appropriate programing for prisoners." *Musgrove v. Ortiz*, 2019 WL 2240563, * 2 (D.N.J. May 24, 2019). Thus, the First Step Act ("FSA") added subsection (h) to 18 U.S.C. § 3621. Pursuant to Section 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and have full implementation complete on January 15, 2022. *See Goodman v. Ortiz*, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). Prisoners that successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A). Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessment, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii). To the extent Petitioner is basing his claim upon the FSA, however, Petitioner's claim is premature. *See Allen v. Hendrix*, 2019 WL 8017868, * 2 – 3 (E.D.Ar. Dec. 13, 2019)(Although the FSA initiated a system allowing for eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming," the BOP had until January 15, 2020, to implement the system, complete inmate risk assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs). Although the FSA required the BOP to "begin to assign prisoners to the appropriate evidence-based recidivism reduction programs based on that determination" and "begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers" by January 15, 2020, the FSA provides two years for the BOP to "provide such evidence-based recidivism reduction programs and productive activities all prisoners." Thus, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities for *all* prisoners. *See Hand v. Barr*, 2021 WL 392445, * 5 (E.D.Cal. Feb. 4, 2021). Furthermore, the FSA provides that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of the enactment of this subchapter" (January 15, 2020). 18 U.S.C. 3632(d)(4)(B).

March 27, 2012)(J. Faber)(finding there is simply no federal requirement for a prison to provide rehabilitation or reentry programs to inmates); Gill v. United States Parole Commission, et al., 692 F. Supp. 623, 628 (E.D.Va. 1988)(holding that the sentencing Court's order recommending that petitioner be placed in a drug rehabilitation program failed to vest any fundamental right in plaintiff to participate in such program); and Pace v. Fauver, 479 F. Supp. 456, 459 (D.N.J. 1979)(holding that prison officials' refusal to allow state prisoners to establish and operate an alcoholic rehabilitation program within the prison was not a violation of the Fifth, Eighth or Fourteenth Amendment). Accordingly, Petitioner's above claim is without merit.

**C.     No protected interest in security classification or placement:**

Finally, Petitioner appears to argue that he has a protected interest in receiving a lower security classification. Petitioner contends that a lower security level will allow him to receive additional good time credit or to participate in programs that may allow for his earlier release.

Neither Section 3621(b) nor the BOP's Program Statement (P.S. 5100.08) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to an inmate's right to a particular security classification. Title 18 U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. 18 U.S.C. § 3621. The language of this statute which provides that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility.[3] Additionally, P.S.

---

[3]  Title 18 U.S.C. § 3621 provides that the BOP may consider the following in determining placement of prisoners:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court state imposed the sentence - -
        (A) concerning the purposes for which the sentence to imprisonment was determined to be

5100.08 allows the BOP to use its "professional judgment" in deciding an inmate's classification. Specifically, P.S. 5100.08[4] states as follows:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.

P.S. 5100.08, Chapter 6, p. 1. Thus, the "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials." O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991); also see Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

Next, federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody, 429 U.S. at 88, n. 9, 97 S.Ct. at 279, n. 9("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or

---

    warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 994(a)(2) of Title 28.

[4] P.S. 5100.08 sets forth the BOP's policies and procedures for the inmate classification system. P.S. 5100.08 provides that "classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."

constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP").

Finally, the Court lacks authority to grant Petitioner's request that this Court enter an order transferring him to a different prison facility. As stated above, the classification and transfer of federal prisoners falls within the broad discretion of the BOP and Courts lack authority to order that a prisoner be confined to any particular institution. See 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); also see McKune v. Lile, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators'' expertise."); Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); United States v. Williams, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole

discretion of the Bureau of Prisons."); Milhouse v. O'Brien, 2014 WL 12521373, (N.D.W.Va. Feb. 25, 2014)(denying plaintiff's motion for temporary or preliminary injunction where plaintiff failed to satisfy the first *Winter's* factor because he could not succeed on his request for a transfer to a different prison facility); Hinton v. Federal Bureau of Prisons, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification.").

Based upon the foregoing, the undersigned respectfully recommends that Petitioner's Section 2241 Petition (Document No. 1) be denied.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: February 10, 2021.

Omar J. Aboulhosn
United States Magistrate Judge