IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

MOHAMMED A. SALEH,

    Petitioner,

v.                                    CIVIL ACTION NO. 5:19-cv-00468

D. YOUNG, Warden,

    Respondent.

## MEMORANDUM OPINION AND ORDER

    Pending is Petitioner Mohammed A. Saleh's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C § 2241, filed June 19, 2019. [Doc 1]. Respondent D. Young responded in opposition [Doc. 9] on August 21, 2019, to which Mr. Saleh replied on September 23, 2019. [Doc. 12].

### I.

    This action was previously referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission of proposed findings and a recommendation ("PF&R"). Magistrate Judge Aboulhosn filed his PF&R on February 10, 2021, recommending that the Court deny Mr. Saleh's Section 2241 Petition for a Writ of Habeas Corpus and remove this matter from the docket. Mr. Saleh timely objected to the PF&R [Doc. 19] on February 25, 2021, to which Warden Young responded on March 9, 2021. [Doc. 20].

## II.

The Court is required "to make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court need not, however, conduct de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Mr. Saleh first objects to the Magistrate Judge's conclusion that no authority supports his claim that prisoners with lower security levels receive more good time credit. Mr. Saleh asserted in his Complaint that he is receiving less good time credit given his incarceration at a medium security prison. The Magistrate Judge explained, however, that 18 U.S.C. § 3624(b)(1) "clearly provides that an inmate serving a sentence greater than 1 year, and less than life, receives up to 54 days at the end of each year 'subject to the determination by the [BOP] that, during the year, the prisoner has displayed exemplary compliance with institutional regulations.'" [Doc. 18 at 3]. The Magistrate Judge thus concluded that no authority supported Mr. Saleh's claim that he would be eligible to receive more good time credit due to his security level or incarceration at a lower-level facility. Mr. Saleh asserts, however, that his claim is under Section 3632(d)(4)(A), not Section 3624(b)(1). Specifically, he contends under the First Step Act ("FSA"), the BOP "created the risk and need assessment system and started giv[ing] 10 days of time credits for every 30 days of successful participation." [Doc. 19 at 2]. He asserts that the BOP is violating the FSA by not permitting all inmates to earn these time credits.

Mr. Saleh fails to acknowledge, however, that the Magistrate Judge also construed his Complaint as potentially asserting the claim pursuant to the First Step Act in footnote two of the PF&R and rejected this assertion in detail. Indeed, the Magistrate Judge explained:

> The undersigned acknowledges that on December 21, 2018, the First Step Act of 2018 was signed into law and created a "new risk and needs assessment system to provide appropriate programing for prisoners." *Musgrove v. Ortiz*, 2019 WL 2240563, * 2 (D.N.J. May 24, 2019). Thus, the First Step Act ("FSA") added subsection (h) to 18 U.S.C. § 3621. Pursuant to Section 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and have full implementation complete on January 15, 2022. *See Goodman v. Ortiz*, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). Prisoners that successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessment, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii). *To the extent Petitioner is basing his claim upon the FSA, however, Petitioner's claim is premature.* See *Allen v. Hendrix*, 2019 WL 8017868, * 2 – 3 (E.D.Ar. Dec. 13, 2019) (Although the FSA initiated a system allowing for eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming," the BOP had until January 15, 2020, to implement the system, complete inmate risk assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs). Although the FSA required the BOP to "begin to assign prisoners to the appropriate evidence-based recidivism reduction programs based on that determination" and "begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers" by January 15, 2020, the FSA provides two years for the BOP to "provide such evidence-based recidivism reduction programs and productive activities all prisoners." Thus, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities for all prisoners. *See Hand v. Barr*, 2021 WL 392445, * 5 (E.D.Cal. Feb. 4, 2021). Furthermore, the FSA provides that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of the enactment of this subchapter" (January 15, 2020). 18 U.S.C. § 3632(d)(4)(B).

[Doc. 18 at 2, n. 2] (emphasis added). The Court finds no error in the Magistrate Judge's well-supported conclusion and thus overrules Mr. Saleh's first objection.

Mr. Saleh next objects to the Magistrate Judge's determination that the Court lacks the authority to transfer him to a different prison facility given that "the classification and transfer of federal prisoners falls within the broad discretion of the BOP." [Doc. 18 at 7]. The Magistrate Judge thoroughly explained that the language of 18 U.S.C. § 3621(b) clearly vests the BOP with

3

broad discretionary authority regarding a prisoner's placement and classification while incarcerated and does not mandate that the BOP place a prisoner in a certain facility. The Magistrate Judge likewise determined that the BOP's Program Statement 5100.08 ("P.S. 5100.08") does not contain mandatory language limiting the BOP's discretion but merely "allows the BOP to use its 'professional judgment' in deciding an inmate's classification." [*Id.* at 6].

It appears Mr. Saleh contends that the Court has the authority to transfer him to a low-level facility pursuant to the *Accardi* doctrine inasmuch as Warden Young is "not following his own administrative policies by keeping petitioner with (3) points" at a medium level facility in violation of P.S. 5100.08. In other words, Mr. Saleh contends that P.S. 5100.08 mandates that he be transferred to a lower-level facility given his low security points. The Court notes that Mr. Saleh failed to raise any violation of the *Accardi* doctrine in his Complaint; nonetheless, Mr. Saleh's assertion is without merit.

The *Accardi* doctrine "provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid." *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). "The crucial question is whether the alleged conduct . . . deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto." *Accardi*, 347 U.S. at 265. Nothing in P.S. 5100.08, however, guarantees or mandates that prisoners with low security points be placed in or transferred to low-level facilities. Instead, P.S. 5100.08 merely "establishes guidelines for designating inmates to institutions according to security level and for assigning custody classifications." *Fields v. Warden of Fed. Corr. Inst.-Bennettsville*, No. 520CV01101SALKDW, 2020 WL 8620171, at *4 (D.S.C. Dec. 21, 2020), report and recommendation adopted sub nom, *Fields v. Warden of Fed. Corr. Inst.*, No. 5:20-CV-1101-JD,

4

2021 WL 694847 (D.S.C. Feb. 23, 2021). While P.S. 5100.08 provides that inmates receive a point score that "is then matched with a commensurate security level institution," it goes onto explain that "[a]n inmate's security point score is not the only factor used in determining a commensurate security level." P.S. 5100.08, Ch. 1 at 2-3. Indeed, the program statement explains that "[t]he application of a [Public Safety Factor] or [Management Variable] could effect [*sic*] placement at either a higher or lower level institution than the specified point total indicates."[1] *Id.* at 3. Accordingly, the Court finds no violation of the *Accardi* doctrine and overrules Mr. Saleh's objection.

To the extent Mr. Saleh is reasserting that his due process rights have been violated as a result of being denied transfer to a low-level facility, the Court finds no error in the Magistrate Judge's well-supported conclusion that federal inmates lack a protected liberty interest in security classification or placement. *See Olim v. Wakinekona*, 461 U.S. 238, 234 (1983) (concluding that prisoners have no constitutional right to be housed in a particular facility); *Meachum v. Farno*, 427 U.S. 215, 227 (1976) (same); *Buzzard v. United States*, 2020 WL 7074177, at *4 (S.D.W. Va. Nov. 13, 2020), report and recommendation adopted, No. CV 3:20-0600, 2020 WL 7061753 (S.D.W. Va. Dec. 2, 2020) ("The law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility."); *Hinton v. Federal Bureau of Prisons*, No. 5:08-cv-01012, 2009 WL 3347158, at *4, n. 5 (S.D.W. Va. Oct. 14, 2009) (J. Johnston) ("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security

---

[1] P.S. 5100.08 further provides that "[a] management variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level." P.S. 5100.08, Ch. 5 at 1. The Court notes that Mr. Saleh's Male Custody Classification Form attached to his Response to Respondent's Order to Show Cause provides a management variable of "greater security" and designates his management security level as "medium." [*See* Doc. 12 at 10].

classification."); *Moore v. O'Brien*, No. 7:08-cv-00417, 2008 WL 2944556, at *1 (W.D.Va. July 29, 2008) ("Inmates have no constitutional right to be housed in any particular prison or jail or in a confinement facility of any particular security level.").

### III.

Based on the foregoing, the Court **OVERRULES** Mr. Saleh's Objections [**Doc. 19**]; **ADOPTS** the Magistrate Judge's PF&R [**Doc. 18**]; **DENIES** Mr. Saleh's Petition for a Writ of Habeas Corpus [**Doc. 1**]; and **REMOVES** this matter from the docket.

The Clerk is directed to send a copy of this Order to counsel of record and any unpresented party.

ENTERED: May 4, 2021

Frank W. Volk
United States District Judge